Than **PORTER**, Plaintiff,

v.

**TALBOT PERKINS CHILDREN'S SERVICES et al., Defendants.**

**No. 72 Civ. 4964.**

United States District Court,
S. D. New York.

Feb. 27, 1973.

Bernard Dworkin, New York City, for plaintiff.

Terry Milburn, New York City, for defendant Talbot Perkins.

Cullen & Dykman, Brooklyn, N. Y., for defendant Brookwood by Warren H. Gunther, Brooklyn, N. Y.

Hale, Grant, Meyerson, O'Brien & McCormick, New York City, for defendant Sheltering Arms by Harold I. Meyerson, and Vincent J. Maroney, New York City.

London, Buttenwieser & Chalif, New York City, for defendant Windham by Helen L. Buttenwieser, New York City.

## OPINION

POLLACK, District Judge.

The defendants, child adoption agencies, have separately moved for dismissal of the complaint herein on the ground that plaintiff has failed to state a claim upon which relief may be granted, Fed. R.Civ.P. 12(b)(6), or, alternatively, for summary judgment in their favor, pursuant to Fed.R.Civ.P. 56 and General Rule 9(g) of this Court. At issue is the question of first impression whether the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681t, which became effective April 26, 1971, ("the Act" hereafter) applies to the activities and to the confidential information and reports of an adoption agency.

The background facts of this suit are not contested. Porter and his wife have three children and have attempted on several occasions to adopt a fourth child. Among the adoption agencies to which they applied were the four named defendants. The applications for adoption were filed with defendant Talbot in December 1969; defendant Sheltering Arms in August–November of 1970; defendant Windham in August 1970; and defendant Brookwood in August 1971. In each instance, the application was denied, as was the subsequent request addressed to each defendant for all information collected or used by the agency with respect to plaintiff and his wife. Plaintiff wrote to each of these agencies in November of 1971 for copies

of any and all reports relating to his application.

Plaintiff seeks both actual and punitive damages claiming to be entitled thereto on the ground that the defendants willfully and wrongfully refused to make the requested disclosures to him in violation of the Act.

## I.

■ The purpose of the Fair Credit Reporting Act is to protect an individual from inaccurate or arbitrary information about himself in a consumer report that is being used as a factor in determining the individual's eligibility for credit, insurance or employment. 116 Cong.Rec. 36572 (1970). Congress ascertained a "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). The Act was designed to require consumer reporting agencies to

> adopt reasonable procedures for meeting the needs of *commerce* for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this [Act]. § 1681(b). (Emphasis supplied).

For the most part, the consumer reporting industry is comprised of credit bureaus, investigative reporting companies and other organizations whose business is the gathering and reporting of information about consumers for use by others in making a decision concerning whether to grant credit, underwrite insurance or employ the subject of such reports. F.T.C., Compliance with the Fair Credit Reporting Act, 4 CCH Consumer Credit Guide ¶ 11,302 (1971).

To advance this design, the Act provides a mechanism with which a consumer can determine what information has been gathered about him for submission to those engaged in commerce and can have the opportunity to correct any inaccuracies in that information. §§ 1681g–1681i; 116 Cong.Rec. 35941. The term "consumer" is broadly defined in the Act as an individual. § 1681a(c). Limitations are imposed on the uses to which the accumulated information may be put. § 1681f. The Act sets a time after which details must be deleted from the files. § 1681c. Willful failure to comply with the provisions of the Act, including those which specifically allow the consumer to examine and correct his file, exposes the credit reporting agency or user of information to civil liability, including actual and punitive damages. § 1681n. Negligent failure to comply may result in actual damages and the imposition of Court costs. § 1681o.

■ The consumer reporting agency, to which the Act is directed, is defined as follows:

> The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers *for the purpose of* furnishing consumer *reports to third parties*, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. § 1681a(f). (Emphasis added).

A finding that a prospective defendant fits within these definitional boundaries is requisite to the imposition of procedural requirements and possible liabilities contained in the Act.

■ Essentially, this definition contains four links. (1) The consumer reporting agency must act for monetary fees, dues, or on a cooperative non-profit basis; (2) it must regularly engage in whole or in part in gathering or evaluating information on consumers; (3) the purpose of such activity must be the distribution of information to third parties engaged in commerce; and (4) the

agency must use a facility of interstate commerce to prepare or distribute the reports.

■ The Federal Trade Commission, which is vested with enforcement powers under the Act, § 1681s, has provided some preliminary interpretations of the Act, 4 CCH Consumer Credit Guide ¶ 11,301 et seq., to which the Court may refer for guidance. Fernandez v. Retail Credit Co., 349 F.Supp. 652 (E.D.La. 1972).

The Federal Trade Commission guidelines have interpreted the coverage of the phrase "consumer credit agencies":

> Obviously, this covers all credit bureaus and others whose business is to create and disseminate such [consumer] reports. However, there are many others who may from time to time function as consumer reporting agencies and, to the extent they issue consumer reports, they will be covered by the Act. For example, some banks and finance companies have engaged in the practice of giving out credit information other than that which they have developed from their own ledgers. To the extent they give out information and experience gained from other creditors, such banks and finance companies would be functioning as consumer reporting agencies and would be required to comply with the terms of the Act. As indicated earlier, giving out a firm's own ledger experience does not make it a consumer reporting agency or the information a consumer report. In order to be a consumer reporting agency, the firm must engage "in whole or in part" in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties. When a firm gives its own credit experience on a consumer to a credit bureau, that information does not constitute a consumer report. . . . ¶ 11,305.

■ The balance of the Federal Trade Commission's interpretation con-

firms that the Agency considers that the Act is dealing with commercial purposes. The persons mentioned by the Federal Trade Commission in its full interpretation are banks and finance companies, detective agencies and others preparing employment reports, and collection agencies, all of which perform services which aid and support institutions making *economic* decisions, such as whether to give employment or whether to loan money. It was to insure accuracy in reports from such organizations, affecting an individual's eligibility for credit, insurance or employment, that the Act was passed; its aim was to impose a legislative filter on the input of the burgeoning consumer credit reporting industry to the flow of commerce. § 1681(a)(2)–(4); Fernandez v. Retail Credit Co., 349 F.Supp. 652 (E.D.La.1972). Certainly where an agency regularly sells consumer reports which affect commercial eligibility, that agency would properly fall within the ambit of the Act. See ¶ 11,354 of the F.T.C. guidelines, where the following interpretation is advanced:

> It is quite common for certain businesses such as insurance companies to request reports on a prospective (or current) insured from various State Departments of Motor Vehicles. These reports are sold to such companies and generally reveal a consumer's entire driving record, including arrests for speeding, drunk driving, involuntary manslaughter, etc.

> It is the Commission's view that, under the circumstances in which such a State motor vehicle report contains information which bears on the "personal characteristics" of the consumer (i. e., when the report refers to an arrest for drunk driving), such reports sold by a Department of Motor Vehicles are "consumer reports" and the agency is a "consumer reporting agency" when it sells such reports.

■ The definition of a consumer reporting agency interlocks with the definition of a consumer report. A consumer reporting agency is an entity that, in

part, issues consumer reports; a consumer report is a report that, among other things, is issued by a consumer reporting agency. § 1681a(d) and (f).

"Consumer report" is defined as follows:

> The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this title. The term does not include (A) any report containing information solely as to transactions or experiences between the consumer and the person making the report. . . .

Among the "other purposes authorized under section 1681b" is a report to a person who

> (D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's *financial* responsibility or status. (Emphasis added).

This definition also has four elements, each of which must be present for a report to fall within the coverage of the Act. (1) There must be a communication of information (2) by a consumer reporting agency, as defined in the Act, (3) which bears on a consumer's credit status or general reputation, and (4) which is used or is expected to be used in the determination of the consumer's eligibility for credit, employment, insurance, or other commercial benefit specified in the Act.

II.

The definitions in the Act, taken together, make clear that social service agencies, such as adoption agencies, were not intended to be included in the sweep of this Act. The focus of Congress was the consumer credit industry (§ 1681) which has been exercising a growing influence in economic decision-making. Of particular concern was the effect of information compiled and forwarded by an entity not dealing directly with an individual, which information would bear on that individual's ability to secure insurance, credit, or employment. Those entities which regularly engage in the collection and dissemination of information with reference to these determinations are now subject to a legislated standard of accuracy and accountability. Entities whose function is far removed from the commercial world are not brought under this standard.

Adoption agencies perform a vital social service in which the state has a large interest, as reflected in the particularity of state law. It cannot be assumed or found that Congress intended to preempt this interest by imposing a federal disclosure law over state adoption proceedings. Nothing in the language of the Act or in the legislative history suggests this radical intention. Some members of Congress did seek a broader law requiring disclosure of all information assembled on an individual, regardless of the purpose for which the information was collected and distributed. 116 Cong.Rec. 36572 (1970). But the Fair Credit Act as enacted has a more limited purpose and effect; it is designed to check informational abuses in the commercial arena.

Plaintiff has tried to characterize the adoption process in a way that can semantically edge the activities of defendants within the structure of the Act. To meet the requirements of § 1681a(f), plaintiff asserts that adoption agencies operate on a cooperative basis; that they regularly engage in part in the as-

sembling or evaluation of "other" than credit information; that such information then becomes a consumer report conveyed to third parties, such as other adoption services; and that means of interstate commerce are employed. The information conveyed is said to constitute a consumer report in that it is purportedly used in the determination by a governmental instrumentality of eligibility for a benefit—the adoption of a child. Plaintiff contends that a Court must approve adoptions and, in its deliberations, must consider "the occupation and appropriate income" of the prospective foster parent. New York Domestic Relations Law § 112 (McKinney's Consol.Laws, Supp.1970).

■ The defendants herein do not prepare consumer reports, as defined in § 1681a(d) and § 1681b(3)(D). Pursuant to § 112 of the Domestic Relations Law adoptive *parents* must submit a petition containing, *inter alia,* employment and income data. The data and information ascertained by the adoption agency from interviews with and forms completed by the applicant are not to establish eligibility for credit, insurance, employment or a governmental license or benefit grounded on financial responsibility. The collected information and the evaluation thereof does *not* affect commercial decisions. The assembled and evaluated information secured for child adoption purposes should and does fall without the "consumer reports" coverage of the Act.

Since the data assembled or used by the adoption agencies herein does not come within the definition of consumer reports, the agencies are not consumer reporting agencies under the Act. § 1681a(f).

■ It should also be noted that there is no evidence on which to conclude that adoption agencies work on a cooperative basis or that their purpose is to provide third parties with any of the information they have compiled. Such a purpose is a prerequisite for classification as a consumer reporting agency. § 1681a(f). Plaintiff avers that there is such a purpose here; officers of defendants by affidavit declare the opposite. In Beal v. Lindsay, 468 F.2d 287, 291 (2nd Cir. 1972), the Court stated:

When the movant comes forward with facts showing that his adversary's case is baseless, the opponent cannot rest on the allegations of the complaint but must adduce factual material which raises a substantial question of the veracity or completeness of the movant's showing or presents countervailing facts.

Here, plaintiff has adduced no such facts.

Since the activities of the defendants and the confidential information collected by them fall outside the terms and intended coverage of the Act, the complaint must be dismissed.

### III.

■ The Fair Credit Reporting Act became effective on April 26, 1971. There is no ground for concluding that the Act was intended to be accorded retroactive effect. Wilson v. Retail Credit Co., 457 F.2d 1406 (5th Cir. 1972).

Two of the defendants herein have moved for summary dismissal of the complaint on the alternative ground that their dealings with plaintiff preceded the effective date of the Act. It appears, however, that even as to these defendants plaintiff requested and was refused information on file *after* the effective date. In view of the holding herein and of the clear applicability of the Act in terms of the effective date to at least one of the defendants, this Court need not determine what actions, if any, may be committed before April 26, 1971 and still render the actor liable under the Act.

Complaint dismissed.

So ordered.