**Motor Vehicle Operator Information**

KANE, *Attorney General,* August 7, 1975.—You have requested our opinion as to whether The Fair Credit Reporting Act is applicable to the Bureau of Accident Analysis and, if so, whether the bureau is in compliance with the provisions of that law. It is our opinion, and you are hereby advised, that the Bureau of Accident Analysis is covered by The Fair Credit Reporting Act and the bureau has failed to comply with the act as required by law.

The Fair Credit Reporting Act, 15 U.S.C. §§1681, et seq., 84 Stat. 1128, applies to consumer reporting agencies. Section 603(f) of the act, 15 U.S.C. §1681a

(f), defines the term "consumer reporting agency" as:

"[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purposes of preparing or furnishing consumer reports."

The term person, as used in The Fair Credit Reporting Act, includes a "government or governmental subdivision or agency, or other entity": section 603(b), 15 U.S.C. §1681a(b).

The act defines a consumer report as:

"[A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes . . .": section 603(d) of the act, 15 U.S.C. §1681a(d).

The Operator Information Service, Bureau of Accident Analysis, PennDOT, has been set up to supply information to the public under section 1402 of The Vehicle Code of April 29, 1959, P. L. 58, as amended, 75 PS §1402, which mandates the sale of operator records to the general public. According to a report by that bureau dated May 3, 1974, 97 percent of all requests are large volume users, corporations, large agencies and companies. These large volume users sell the information to insurance companies, credit agencies and employers. The major users are auto-

mobile insurance companies, which use this data to evaluate insurability and to establish premium rates. In Pennsylvania, the purpose of collecting information on consumers by the Operator Information Service results in the distribution of such information to third parties engaged in commerce.

The Federal Trade Commission, whose duty it is to administer The Fair Credit Reporting Act, has rendered an advisory interpretation on the applicability of the act to State agencies charged with the duty of compiling and disseminating motor vehicle reports: 16 C.F.R. §600.1-600.6 (Federal Register, vol. 39, no. 37, 4945, February 23, 1973). In part the opinion states:

"(b) It is the Commission's view that, under the circumstances in which such a State motor vehicle report contains information which bears on the 'personal characteristics' of the consumers, that is, when the report refers to an arrest for drunk driving, such reports sold by a department of motor vehicles are 'consumer reports' and the agency is a 'consumer reporting agency' when it sells such reports.

". . .

"(d) We believe that there is no basis for granting State motor vehicle departments an exemption from the definition of 'consumer reporting agency'. (Section 603(f)). The reports clearly contain information 'bearing on a consumer's . . . character, general reputation, personal characteristics, or mode of living', and when they are used 'as a factor in establishing the consumer's eligibility for . . . insurance' (Section 603(d)), the FCRA should apply."

The important consideration is not the purpose of gathering the information, but the nature of the information furnished and the sources to which it is communicated. An Oregon Attorney General opinion,

dated April 30, 1974, makes the same distinction and finds its Motor Vehicles Division qualifying as a "consumer reporting agency." It is improbable that Congress intended to exempt State agencies from compliance with the act in an area where careless or inaccurate reporting could have such detrimental effects on the consumer.

The purpose of The Fair Credit Reporting Act is to protect consumers from the circulation of inaccurate or arbitrary information bearing on the individuals' prospects for employment, credit or insurance: Porter v. Talbot Perkins Children's Services, 355 F. Supp. 174 (S.D. N.Y., 1973). In keeping with this purpose, it is our determination that the Bureau of Accident Analysis is a consumer reporting agency governed by The Fair Credit Reporting Act.

The bureau must comply with several statutory mandates in order to satisfy the requirements of the act. Upon request of any consumer it must disclose the nature and substance of any information it maintains on that consumer at that time, the recipients of that information and, in most cases, the source of the information (section 609(a), 15 U.S.C. §1681g (a)); a trained person must be provided by the bureau to explain to the consumer any information required to be furnished to him (section 610, 15 U.S.C. §1681h (c)); if the accuracy of the information is disputed, it must comply with the act's reinvestigation procedures (section 611, 15 U.S.C. §1681i); meet the obsolescence requirements limiting arrest records to seven years (section 605, 15 U.S.C. §1681c(a)(g)); establish and follow procedures assuring maximum possible accuracy of information (section 607(b), 15 U.S.C. §1681e(b)); restrict access to reports to qualified users and qualified purposes (section 607, 15 U.S.C. §1681e(a)). You have informed us that several of these requirements are not now being satisfied.

In conclusion, it is our opinion that the Bureau of Accident Analysis of the Pennsylvania Department of Transportation is a consumer reporting agency under The Fair Credit Reporting Act and, therefore, governed by its provisions. Accordingly, the bureau must either discontinue its activities as a consumer reporting agency by ceasing the practice of supplying driver information for a charge, or, if it continues such activities, it must comply with the statutory mandates of the act.