James GREENWAY et al., Appellees,

v.

INFORMATION DYNAMICS, LTD., etc., Appellant.

No. 75–1311.

United States Court of Appeals, Ninth Circuit.

Oct. 2, 1975.

Rehearing Denied Nov. 5, 1975.

Certiorari Dismissed Feb. 26, 1976. See 96 S.Ct. 1153.

Paul W. Holloway (argued), of Anderson & Holloway, Phoenix, Ariz., for appellant.

Dan J. McAuliffe (argued), of Snell & Wilmer, Phoenix, Ariz., for appellees.

## OPINION

Before ELY and WRIGHT, Circuit Judges, and EAST, District Judge.*

PER CURIAM:

We adopt the careful reasoning of Judge Copple, reported at 399 F.Supp. 1092 (D.Ariz.1975). The only contention here made by the appellant is that it is not a "consumer reporting agency". Under the Federal Fair Credit Reporting Act's definition of a "consumer report" (15 U.S.C. § 1681a(d)), the appellant's argument must be rejected. Not only does a report of the previous issuance of an unpayable check bear "on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, [and] personal characteristics . . .", a check itself is, essentially, an instrument of credit.[1]

Affirmed.

EUGENE A. WRIGHT, Circuit Judge (dissenting):

I respectfully dissent because I believe that the activities of the appellant Information Dynamics, Ltd. (IDL) do not fall within the purview of the statute.

Information about a consumer's bad check-writing habits does concededly "bear on" his "character, general reputation, personal characteristics, or mode of living." [15 U.S.C. § 1681a(d).] But a check drawn on a commercial bank is tantamount to cash. It is a "commercial device intended for use as a temporary expedient for actual money, and generally designed for *immediate* payment, and not for circulation." Black's Law Dictionary 301 (4th rev. ed. 1968). (Emphasis added.) *See State v. Perrigoue*, 81 Wash.2d 640, 503 P.2d 1063 (1972); *Automotive Tire Service, Inc. v. First National Bank of Arizona*, 102 Ariz. 512, 433 P.2d 804 (1967). Unlike most credit transactions, a merchant receiving a check does not charge interest on the obligation since he anticipates prompt presentation and payment.

Therefore, IDL's reporting system does not facilitate the merchant's determination of whether to extend credit. It is equally clear that such information does not relate to insurance or employment matters. [15 U.S.C. § 1681a(d)(1)–(2).] The issue in this case, then, is whether such information is a "consumer report"[1] used "for the purpose of serving as a factor in establishing the consumer's elibility for . . . (3) other purposes authorized under section 1681b."

Subsection (3) of Section 1681b permits the use of "consumer reports" in connection with credit transactions, consideration for employment, and the un-

---

\* Honorable William G. East, Senior United States District Judge, Eugene, Oregon, sitting by designation.

1. The majority rejects that which it perceives as its Brother Wright's principal thesis, *i.e.*, that supposed legislative history, even if accurate rather than only speculative, can override the plain, unambiguous language of a Congres-

sional Act and lawful regulations issued under authority conferred by the Act.

1. IDL cannot, for the purposes of this case, be deemed a "consumer reporting agency" unless it distributes "consumer reports" [15 U.S.C. § 1681a(f)]; *Porter v. Talbot Perkins Children's Services*, 355 F.Supp. 174, 177–78 (S.D. N.Y.1973); 116 Cong.Rec. 35941 (Oct. 9, 1970) (remarks of Sen. Proxmire).

derwriting of insurance. In addition, they may be used in connection with the granting of a license or other benefit by a governmental agency. Finally, and ambiguously, Section 1681b(3)(E) allows distribution of a "consumer report" to a person who "otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer."

An overall reading of Section 1681b suggests that subsection (3)(E) is included not to expand the reach of the Act, but rather to give "consumer reporting agencies" a certain amount of freedom in distributing consumer information for "legitimate" business needs.[2]

The Greenways make too much mileage out of Section 1681b(3)(E). They argue first that IDL's scheme falls within the purview of the Act because (3)(E) is incorporated into Section 1681a(d). They next argue that (3)(E) is violated because the information provided does not always relate to a "legitimate" transaction with "*the* consumer." Yet if (3)(E) is violated, then IDL's purpose is not "authorized under section 1681b," and is therefore not incorporated into Section 1681a(d).[3] From this statutory conundrum the reasoning of appellees does not extract us.

The ambiguity created by incorporation of Section 1681b(3)(E) into Section 1681a(d) necessitates referral to complementary sections and legislative history. Both sources indicate again and again that Congress contemplated coverage only of credit, insurance and employment transactions. *See* 15 U.S.C. §§ 1681c(b), 1681m(a); 116 Cong.Rec. 35938–41, 36571–72 (Oct. 9, 13, 1970). What became enshrined in the Act as a "consumer report" was variously referred to during Congressional debate as a "credit report," a "credit file," 116 Cong.Rec. 35940, 36571 (Oct. 9, 13, 1970), and an "active file containing personal data." 116 Cong.Rec. 36571 (Oct. 13, 1970). There was discussion that the term "consumer report" should not include the information disseminated by hotels and motels about "people who skip without paying bills—or pay with checks that bounce." 116 Cong.Rec. 36574 (Oct. 13, 1970) (remarks of Rep. Widnall).

My scrutiny of the Act as a whole and its legislative history leads me to conclude that Section 1681b(3)(E) does not expand the definition of "consumer report" to include information used for purposes other than credit, insurance or employment. Rather, (3)(E) would allow information, which concededly constitutes a "consumer report" because used for credit, insurance or employment purposes, to be used also for other legitimate business needs unrelated to one or more of those three purposes.

In this case, however, IDL'S information is used only to minimize the receipt of bad checks. The data provided (name, driver's license number, checking account number and reason for the check "bouncing") does not in my mind constitute a "credit file" or "credit report." The transaction is equivalent to a cash transaction. The reporting scheme is designed to prevent practices which are often illegal,[4] and is similar to the procedure employed by hotel and motel operators. *Cf. Fite v. Retail Credit Co.*, 386 F.Supp. 1045 (D.Mont.1975).

It is worthy of note that the district courts have tended to strictly construe, and narrowly limit, the provisions of the

---

**2.** The use of the word "otherwise" in Section 1681b(3)(E) indicates that all of the permissible purposes must fulfill "legitimate business need[s]." This is one of the "consumer rights secured by the act." 116 Cong.Rec. 35941 (Oct. 9, 1970) (remarks of Sen. Proxmire). The right secured is that, once given information is determined to be a "consumer report," it must be furnished only for a legitimate business purpose. *See* 15 U.S.C. § 1681e(a). This is not the same as saying that any information

used for a legitimate business purpose is a "consumer report."

**3.** *Reductio ad absurdum*, the less legitimate the need under Section 1681b(3)(E), the less likely that the scheme will be "authorized" under that section, and therefore incorporated into Section 1681a(d) so as to fall within the Act's coverage!

**4.** *See A.R.S.* §§ 13–311, 13–316, 13–421.

**1148**

Fair Credit Reporting Act. *See Fite, su-pra*; *Wrigley v. Dun & Bradstreet*, 375 F.Supp. 969 (N.D.Ga.1974) *aff'd* 500 F.2d 1183 (5th Cir. 1974); *Sizemore v. Bambi Leasing Corp.*, 360 F.Supp. 252 (N.D.Ga. 1973); *Porter v. Talbot Perkins Children's Services*, 355 F.Supp. 174 (S.D.N. Y.1973); *Fernandez v. Retail Credit Co.*, 349 F.Supp. 652 (E.D.La.1972). *But see Beresh v. Retail Credit Co., Inc.*, 358 F.Supp. 260 (C.D.Cal.1973).

In reaching its decision the district court relied on interpretation of the Act by the Federal Trade Commission. However, that agency by statute is authorized only to make "procedural rules," not substantive regulations. [15 U.S.C. § 1681s(a).] *See* 116 Cong.Rec. 36571, 36573 (Oct. 13, 1970). The opinion of the Commission cannot then be given great weight.

For the reasons I have stated, the judgment of the district court should be reversed.