Terrance J. **MILBAUER**, Plaintiff,

v.

**TRW, INC.**, Defendant.

No. CV 88–1250.

United States District Court,
E.D. New York.

Feb. 27, 1989.

John Trubee Miller, Islandia, N.Y., for plaintiff.

Townley & Updike by Jerome P. Coleman, New York City, for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Terrance J. Milbauer ("Milbauer") brings this action pursuant to the Fair Credit Reporting Acts of the United States, *see* 15 U.S.C. § 1681 (the "Federal Act") and of the State of New York, *see* N.Y.Gen.Bus.L. § 380 (McKinney 1987) (the "State Act") (collectively the "Acts"). According to Milbauer, defendant TRW, Inc. ("TRW"), a consumer reporting agency engaged in the business of assembling and disseminating consumer credit information, violated the Federal and State Acts by failing to properly investigate items of information disputed by Milbauer. Milbauer further claims that TRW violated the State Act by failing to notify Milbauer when public record information was reported to a user of a credit report and by failing to maintain reasonable procedures to ensure the accuracy of public record information it reports. Because of TRW's allegedly wrongful conduct, plaintiff seeks compensatory and punitive damages in the amount of fifteen million dollars and a reasonable attorney's fee. Presently before the Court is plaintiff's motion for summary judgment on the issue of liability. For the reasons that follow, plaintiff's motion is denied.

## I. *Background*

Plaintiff's claims center around TRW's alleged failure to properly investigate a factual matter reported on plaintiff's credit report. Although the parties' affidavits characterize the events preceding this lawsuit in different lights, certain factual matters are not in dispute. It is clear, for example, that at some point prior to February 1988 a credit report prepared by TRW noted that a judgment had been entered against Milbauer in the Supreme Court of the State of New York, County of Queens (the "Judgment"). A review of the parties' submissions reveals that the Judgment was erroneously entered and, upon the motion of the party in whose favor the Judgment was entered, it was vacated. The order vacating the Judgment is before this Court and is dated April 29, 1987. Although the Judgment was vacated in 1987, it was not removed from TRW's credit report until February 19, 1988.

The removal of the Judgment followed TRW's receipt of a letter authored by John T. Miller, plaintiff's attorney. According to plaintiff, Miller was retained in January 1988 to "advise, represent and assist" plaintiff in connection with credit problems he was experiencing. Included among those credit problems was plaintiff's alleged inability to obtain a car loan in January of 1988. In a letter dated February 2, 1988 plaintiff's attorney advised TRW's consumer relations department that the Judgment had been vacated. That letter included a copy of the order vacating the Judgment, asked that the Judgment be deleted from Milbauer's credit report and requested that an updated copy of Milbauer's credit report be forwarded to Miller and his client.

Although TRW failed to respond, in writing, to Miller's request, the company appears to have considered the documents submitted by Miller because on February 19, 1988 the Judgment was deleted from Milbauer's credit report. On March 7, 1988 TRW sent a written communication directly to Milbauer. Instead of informing Milbauer of the February 19, 1988 removal of the Judgment from his credit report, the March 7 letter noted TRW's receipt of the February 2 letter and stated that TRW had "reason to believe" that Milbauer was "assisted by a third party" when submitting his dispute. TRW's March 7 letter continues:

Contrary to what you may have been advised, no one can require a credit bu-

reau to delete an accurate item of information from your file; no one can 'repair' your credit history.

In reviewing the file, we have taken into consideration the source and or form of the dispute and believe that it is irrelevant or frivolous. Therefore, we are advising you that at this time we are not performing a reinvestigation.

Because the March 7 letter informed neither Milbauer nor his attorney of the February 19 deletion of the Judgment from Milbauer's credit report, a second letter, dated March 21, 1988, was sent by Milbauer's attorney to TRW. That letter refers to the February 2 letter and to TRW's failure to respond. It states that TRW's failure to update Milbauer's credit report is causing Milbauer financial damage. Finally, the March 21 letter threatens that appropriate legal proceedings will be instituted if the Judgment is not immediately deleted from Milbauer's credit report. When TRW failed to respond to the March 21 letter the present action was commenced.

## II. *Plaintiff's Motion*

Plaintiff presently moves for summary judgment on the issue of liability. As noted above, plaintiff claims that defendant violated the Federal and State Fair Credit Reporting Acts by failing to properly reinvestigate items of information disputed by Milbauer. Plaintiff further claims that TRW violated the State Act by failing to notify Milbauer when public record information was reported to the user of a credit report and by failing to maintain reasonable procedures ensuring the accuracy of Milbauer's credit report.

### A. The Alleged Failure to Investigate

Milbauer's failure to investigate claim is based on the notion that TRW failed to properly reinvestigate the accuracy of the Judgment. According to Milbauer, TRW wilfully failed to comply with the requirements of the Federal and State Acts when it "failed and refused to reinvestigate items of information disputed by a consumer." Complaint ¶ 22.

TRW's defense is rooted in the language of the credit reporting statutes upon which plaintiff relies. Those statutes outline the procedures to be used by a consumer reporting agency like TRW when a consumer disputes the accuracy of any item of information contained in the consumer's file. Both the Federal and State Acts obligate the consumer reporting agency to reinvestigate the status of disputed information when the dispute is "directly conveyed" to the agency "by the consumer." 15 U.S.C. § 1681(a); N.Y.Gen.Bus.L. § 380–f(a) (McKinney 1984). Seizing upon this language, TRW argues that it is not obligated to respond to inquiries submitted by anyone other than the consumer, including, for example, the consumer's attorney. In an affidavit signed by a TRW executive TRW states that Miller, Milbauer's attorney, has instituted several actions against TRW on behalf of clients. The affidavit further states that Miller is in the business of offering, for a fee, to act as a go-between to cause TRW to change or delete items of information in its files. TRW disparagingly refers to Miller's practice as the operation of a "credit repair clinic" and concludes that it is not legally obligated to respond to Miller's letters.

In support of its argument that it need not respond to inquiries submitted by Miller or any other third party, TRW points to a Staff Opinion Letter of the Federal Trade Commission (the "FTC"), the Federal agency responsible for administering and enforcing the Federal Act (the "Opinion Letter"). The Opinion Letter is dated August 4, 1987 and states the FTC's opinion that a consumer reporting agency is not required to reinvestigate a dispute submitted by a third party on behalf of a consumer. In support of its opinion, the FTC cites the plain language of the statute and states that "common sense indicates that the individual (and not the representative) should submit the dispute, because it is he or she that has the knowledge regarding the facts." Thus, the Opinion Letter concludes that consumer reporting agencies need not respond to inquiries submitted by anyone other than the consumer. Finally, the Opinion Letter states that "a power of at-

torney cannot be used to require a consumer reporting agency to take any action ... concerning a dispute submitted by a third party."

 While the Opinion Letter may absolve TRW from liability for wilful misconduct, its view of the law is not binding on this Court. After considering the Commission's reasoning and the purposes of the Federal and State Acts, the Court rejects the Commission's bright line approach to determining whether or not a consumer credit agency must respond to a consumer's inquiry. For reasons set forth more fully below, the Court finds that if it adopts the Commission's interpretation, many consumers will be deprived of the help they need to prepare their disputes for submission to consumer reporting agencies. Thus, the Court holds that consumer reporting agencies such as TRW are not privileged to ignore a consumer's dispute simply because that dispute is submitted by a third party. For purposes of the present action, this means that the mere fact that Milbauer's dispute was submitted by a third party does not constitute a complete defense to Milbauer's first claim.

While there is some sense to the Commission's notion that the consumer will have full knowledge of all pertinent facts, the Court can easily envision a case where the services of an attorney are needed. The case presently before the Court is a perfect example of such a case. Here, the erroneous information consisted of a judgment. The problem could be corrected only by bringing the judgment to the attention of the party in whose favor it was rendered and asking that party to move to have the judgment vacated. After the judgment was vacated the information could most convincingly be communicated to TRW by presenting it with certified copies of all relevant court documents. While the Court can certainly envision a private individual being capable of performing the tasks necessary to correct his file, an attorney could be of enormous help and could save the individual a great deal of time and effort. Thus, it would be unfair, under circumstances like those present here, to deprive

an individual of the assistance he may need by banning all third parties from communicating, on the consumer's behalf, directly with the consumer reporting agency.

In holding that the Federal and State Acts do not give consumer reporting agencies the right to ignore all inquiries submitted by third parties, the Court does not mean to condone the conduct of an attorney who takes advantage of citizens by holding himself out as being able to accomplish something the individual could do for himself without paying an attorney's fee. Such conduct is dishonest and would certainly violate the attorney's ethical obligations. Accordingly, the Court suggests that it would be prudent for an attorney whose client is faced with credit problems to inquire whether the client has attempted to contact the reporting agency directly. This is the individual's right and, in many cases, will obviate the need for paying a legal fee. If, however, the client chooses not to deal directly with the reporting agency because of a lack of time, proficiency with the language, or some other reason, that person should not be deprived of the right to have his dispute submitted to a consumer reporting agency by an attorney or other third party.

A construction of the Federal and State Acts that allows individuals to communicate their disputes through a third party is completely in line with the purposes of the Fair Credit Reporting Acts. Such statutes were enacted, in large part, to ensure the "accuracy, relevancy and proper litigation" of credit information, 15 U.S.C. § 1681(b), and to protect consumers from the dissemination of inaccurate and possibly damaging information. *See, e.g., Porter v. Talbot Perkins Children's Services*, 355 F.Supp. 174, 176 (S.D.N.Y.1973). Since allowing third parties to assist consumers will likely lead to the expedited correction of credit reports it will further the purposes of the Acts.

Support for allowing consumers to be assisted by third parties is also found in the sections of the Federal and State Acts that regulate the conditions under which disclosure of credit information is to be made to

consumers. Both Acts provide that a consumer who wishes to view his credit report may appear, in person, at the reporting agency during normal business hours on reasonable notice. 15 U.S.C. § 1681h(a); N.Y.Gen.Bus.L. § 380–d(a) (McKinney 1984). The statutes further provide that when appearing to view his credit file the consumer may be accompanied by one other person of his choosing. 15 U.S.C. § 1681h(d); N.Y.Gen.Bus.L. § 380–e(d) (McKinney 1984). Presumably, a consumer is granted the right to be accompanied by another individual so that the consumer may be assisted when viewing his file. To allow a consumer the aid of a third party when appearing in person, but to deny such assistance when an inquiry is made in writing, appears to the Court to be an anomolous result. Thus, the Court finds that permitting a third party to submit a dispute on behalf of a consumer is consistent with those sections of the Acts that regulate in-person disclosure of credit information to the consumer.

In allowing third parties to submit disputes on behalf of consumers, the Court is not insensitive to the needs of the consumer reporting agency to maintain the confidentiality of the consumer's files. It appears that Congress had similar considerations in mind when drafting the sections of the Acts referred to above, that allow consumers to be assisted by third parties when viewing their files. To ensure that information in a consumer's files remains confidential both the Federal and State Acts allow the credit reporting agency to require that the consumer "furnish a written statement granting permission to the consumer reporting agency to discuss the consumer's file" in the presence of the person accompanying the individual to view his file. 15 U.S.C. § 1681h(d); N.Y.Gen.Bus.L. § 380–e(d) (McKinney 1984). In view of the sensitive nature of the information contained in a consumer's credit file, a similar safeguard is certainly in order when information about an individual's credit profile is communicated through the mails. Thus, it would not be unreasonable for a consumer reporting agency to require, prior to communicating with a third party, that the agency receive the consumer's written consent to discuss the credit report with the third party. Indeed, the requirement of such a writing would appear to be the most prudent course.

In sum, the Court holds that the language of the Federal and State Acts does not constitute a complete defense to the claim that TRW failed to properly reinvestigate an item disputed by plaintiff. TRW's reliance on the Opinion Letter is evidence of its good faith and it may be proven, at trial, that TRW acted reasonably and in a timely manner in deleting the Judgment by February 19, 1988. Its reliance on the Fair Credit Reporting Acts, however, does not constitute an absolute defense to Milbauer's claim that TRW failed to properly reinvestigate the issue of the disputed judgment. A final decision of this matter can only be rendered after discovery and a trial on the merits.

### B. The Public Record Information Claim

■ Section 380–g of New York's Fair Credit Reporting Statute ("Section 380–g") sets forth certain requirements for consumer reporting agencies that compile and report items of public record information. Specifically, the statute requires that such agencies shall:

at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

maintain reasonable procedures designed to insure that whenever public record information is reported it is complete and up to date to the extent practicable.

N.Y.Gen.Bus.L. § 380–g (McKinney 1984). As the statutory language indicates, consumer reporting agencies have the option of either notifying the consumer whenever public record information is communicated to users of credit reports or maintaining reasonable procedures to ensure the accuracy of the public record information they

possess. While it appears clear that Milbauer was not notified of TRW's communication of any public record information, it is unclear whether TRW fulfilled its statutory obligation to maintain reasonable procedures ensuring the accuracy of its information. Since no facts have yet been discovered to show whether or not TRW has complied with the requirements set forth in Section 380–g, the Court must deny plaintiff's motion to the extent that it seeks to impose liability on the theory that TRW violated that section of the State Act.

## CONCLUSION

Plaintiff's motion for summary judgment is denied in all respects. The statutory language allowing consumers to communicate directly with consumer reporting agencies does not constitute a complete defense to Milbauer's claim that TRW failed to reinvestigate the issue of the accuracy of the Judgment in a timely fashion. TRW's liability will be assessed solely with respect to the standards set forth in the Federal and State Acts. If, after trial, it is determined that TRW wilfully failed to comply with any requirements of the Acts, it will be held liable to plaintiff for compensatory damages, a reasonable attorney's fee and, if the Court allows, punitive damages. *See* 15 U.S.C. § 1681n; N.Y.Gen.Bus.L. § 380–1 (McKinney 1984). If plaintiff prevails on the claim that TRW negligently failed to comply with any statutory requirement, he may recover compensatory damages and a reasonable attorney's fee. *See* 15 U.S.C. § 1681*o*; N.Y.Gen.Bus.L. § 380–m (McKinney 1984).

At this stage in the litigation it is too early to tell whether TRW will be found liable to Milbauer. Although the time in which discovery was to have been completed has passed, the Court will allow the parties a reasonable amount of time in which to conduct discovery. The Court hereby refers this case back to the Honorable David F. Jordan, United States Magistrate, for the purpose of supervising discovery and deciding any non-dispositive motions that may arise. The parties are ordered to contact Magistrate Jordan's Chambers within fifteen days of the date of this order for the purpose of arranging a scheduling conference.

SO ORDERED.