433 P.2d 804

**AUTOMOTIVE TIRE SERVICE, INC.,**
an Arizona corporation, Appellant,

v.

**FIRST NATIONAL BANK OF ARIZONA,
PHOENIX, a national banking
association, Appellee.**

No. 8125.

Supreme Court of Arizona,
In Banc.

Nov. 15, 1967.

Jestila & Holroyd, Phoenix, for appellant.

Kramer, Roche, Burch & Streich, by Paul D. Levie, Phoenix, for appellee.

LOCKWOOD, Justice:

Plaintiff, First National Bank of Arizona in Phoenix (hereinafter designated the Bank) brought suit against its depositor, Automotive Tire Service, Inc., d. b. a. Duddy's of Arizona (hereinafter designated Duddy's) for the sum of $2,418.52. The Bank alleged that this amount had been by mutual agreement recredited to the account of Duddy's after a check drawn by Duddy's on which payment had been ordered stopped was later paid by the Bank through inadvertence and mistake. The facts of this controversy as found by the court sitting without a jury are as follows.

Duddy's had for some time purchased tires from the Dunlop Tire & Rubber Company. Payments on account were regularly made by Duddy's by drawing checks

in favor of Dunlop against Duddy's account on deposit at the Bank. The court found that prior to July 1960 Duddy's owed to Dunlop on account $4,499.77, (minus credits not in excess of $1,000.00) for merchandise purchased; of that sum the amount of $2,418.52 was due immediately and payable to Dunlop by July 10, 1960. On July 11th a check in the amount of $2,418.52 was prepared, signed, and mailed to Dunlop. Between July 11th and July 13th Duddy's decided to discontinue doing business with Dunlop, and on July 13th Robert Miller, the bookkeeper for Duddy's with authorization from Sumner Brown, the president and manager of Duddy's, telephoned the Bank to request that a "stop-payment order" be placed on the check to Dunlop. A written letter of authorization from Duddy's to stop payment was received by the Bank on July 14th. On July 15, 1960, the check was inadvertently paid and the sum of $2,418.52 deducted from Duddy's balance. Duddy's was not aware that the check had been paid until the July statement was examined by the bookkeeper, Robert Miller.

Sumner Brown went to the Bank's officer to protest the payment over the stop order. It was then agreed by the parties that the amount of the check would be recredited to Duddy's account on the strength of Brown's assurance that when merchandise was returned to Dunlop and credit given, and when the business affairs between Dunlop and Duddy's were settled, the amount would be repaid the Bank. The Bank's officer testified that the decision to recredit Duddy's account was based on the Bank's desire to keep the account and business of Duddy's. No merchandise was ever returned to Dunlop, and in fact all of it was sold in the regular course of Duddy's business. The sum of $2,418.52 has never been paid to the Bank.

At trial, and after all evidence was presented, the court entered judgment for the Bank for the full amount alleged to be owing from Duddy's. Duddy's motions to vacate the findings of fact and conclusions of law, and for new trial, were denied.

Duddy's grounds its appeal to this Court on the contention that the law will not support the judgment entered for the Bank. On the facts of this case, we cannot agree with that contention.

At the outset, we note that § 44–589 A.R.S. (1956) provides:

"A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check."

A check is merely the drawer's order to pay the named payee the amount specified. As such, the order can be countermanded any time before payment or certification. Section 6–259, A.R.S. (1956) specifically states:

"A revocation, countermand or stop-payment order relating to the payment of a check or draft against the account of a depositor in a bank doing business in this state shall not be effective unless made in writing and shall not remain in effect for more than six months after service thereof on the bank, unless it is renewed in writing. The renewal shall not be in effect for more than six months from date of service thereof on the bank, but renewals may be made from time to time."

We are satisfied that Duddy's has complied with this provision, and find that the stop order served on the Bank was valid.

At common law, if a bank paid a check over the valid stop payment order of its depositor it could neither charge the depositor's account nor recover the amount paid. See Hiroshima v. Bank of Italy, 78 Cal.App. 362, 248 P. 947 (1926); Tremont Trust Co. v. Burack, 235 Mass. 398, 126 N.E. 782, 9 A.L.R. 1067 (1920). This rule was based on principles of contract law; that it was a breach of the contract

arising from the debtor-creditor relationship of bank to depositor to pay a check over a valid stop payment order. Duddy's contends that we should hold the bank absolutely liable as a matter of law for the inadvertent payment over the stop payment order. However, this is not the true issue involved here.

Duddy's has, in no way, suffered any damage as a result of this entire transaction. The amount here in controversy was due and payable to Dunlop at the time when payment was ordered stopped. The Bank recredited to Duddy's account the amount it had inadvertently paid. Duddy's does not contend that any of the merchandise purchased, as represented by the amount due Dunlop, was either defective or unmerchantable; the merchandise which Duddy's stated would be returned to Dunlop in fact was subsequently sold by Duddy's in the regular course of its business.

 The Bank, however, has sustained damage in this transaction. The decision of the Bank's officer to recredit Duddy's account after the check was paid was based on a good faith desire to continue good business relations with Duddy's. And this good faith was obviously predicated on the assurance of Sumner Brown that the amount would be repaid after the business affairs with Dunlop were settled. We believe that, in the total absence of any showing of damage to Duddy's, it is clearly inequitable to permit Duddy's to retain both the merchandise and the amount which the Bank recredited to its account. Equity and good conscience requires that "A person who has been unjustly enriched at the expense of another is required to make restitution to the other". Restatement, Restitution § 1 (1937). It is obvious that the Bank to its detriment conferred a benefit upon Duddy's, and by the facts and law which control here, that benefit cannnot be retained to the continued detriment of the Bank. We hold, therefore, that since Duddy's has failed to show any damage resulting from the Bank's error, the Superior Court was correct in entering judgment for the Bank.

Judgment affirmed.

BERNSTEIN, C. J., McFARLAND, V. C. J., and STRUCKMEYER and UDALL, JJ., concur.