505 P.2d 547

VINNELL CORPORATION, a California corporation, and Aetna Casualty and Surety Company, a Connecticut corporation, Appellants,

v.

STATE of Arizona ex rel. BOB SKOUSEN CONTRACTOR, INC., Appellee.

No. 10725–PR.

Supreme Court of Arizona,
In Banc.

Jan. 25, 1973.

Lewis & Roca, by John P. Frank, Peter D. Baird, J. David Rich, Phoenix, for appellants.

Fennemore, Craig, von Ammon & Udall, by Calvin H. Udall, Philip F. Schneider, Jr., Phoenix, for appellee.

LOCKWOOD, Justice:

We accepted this petition for review to resolve the question of whether general contractor, Vinnell Corporation, had wrongfully terminated a contract executed

with subcontractor, Bob Skousen Contractor, Inc.

In early 1966 Vinnell was awarded a contract by the Arizona State Highway Department for construction of a portion of the Duncan-Alpine Highway north of Clifton. Because of the difficulty of constructing the project, Vinnell was given more than a year to complete the job. The project was required by contract to be finished by March 31, 1967.

On February 28, 1966 Vinnell and Skousen executed a written subcontract for construction of a portion of the project. The contract included the following paragraph (11):

"If Subcontractor fails to prosecute the work required hereunder diligently, or to make the progress required by Owner or Contractor or fails in any way to perform the conditions hereof * * * Contractor shall have the right, if it so elects * * * by giving 48 hours written notice of its election to Subcontractor to take over all work, or any part thereof * * *. In such event Subcontractor shall not be entitled to receive any further payment until the work is finished. If the unpaid balance of the contract price hereof exceeds Contractor's expense of finishing work, such excess shall be paid to Subcontractor * * *."

Skousen testified that during the negotiations for the subcontract he insisted that he be guaranteed four months to complete the work. He stated that Vinnell assured him that he would" have plenty of time to do the job," and that he could begin in August. Based upon this commitment Skousen agreed to sign the subcontract.

The written subcontract however, did not specify the starting or completion date. Before furnishing a bond under the subcontract, Skousen "insisted" that Vinnell specify a starting date. Vinnell responded by demanding that the bond be posted and stated in a letter that Skousen's starting date would be "approximately October 1, 1966." The bond was then posted.

In fact Skousen was not given notice by Vinnell to start the project until December 30, 1966. Skousen did not begin work immediately as required by the subcontract and there is a disparity in the testimony as to the reason for the delay. Skousen testified that Vinnell had not fulfilled its responsibility of preparing the project for his work. However, Vinnell stated that Skousen was slow in getting started.

Skousen did begin working on January 23, 1967 but Vinnell informed him that the project was required to be completed by March 10, 1967. The testimony is again in conflict on the question of whether Skousen was "dragging his feet" or whether he worked diligently, once the project was begun. Skousen informed Vinnell that he could not complete the job by March 10. Vinnell then advised Skousen that he was taking over the job. Skousen was told by Vinnell's lawyer that if necessary the project would be taken over the "hard way," which would necessitate a lawsuit. But the alternative of consensual agreement was offered.

Skousen acquiesced and on February 28, 1967, the day of the takeover, Skousen signed the following agreement:

"The undersigned Sub-Contractor Bob Skousen having failed to increase progress hereby agrees that Vinnell Corporation shall take over all work in his subcontract on the Duncan-Alpine Highway.

The undersigned further agrees, because of prior notices, to waive forty-eight hours written notice required by paragraph eleven of his sub-contract.

It is agreed that the foregoing is under paragraph eleven of the sub-contract."

At the same time the parties executed a rental agreement whereby Skousen agreed to rent equipment to Vinnell. He then left the job and Vinnell finished the project. Vinnell's expenses in completing the project were so great that Skousen was tendered only a small amount as prescribed under paragraph 11 of the subcontract.

Skousen sued for wrongful termination of the subcontract. The jury returned a verdict for Skousen and Vinnell appealed.

Our determination of this case hinges upon interpretation of the agreement signed by the parties on February 28, 1967. Vinnell argues that the signing of the agreement by Skousen terminated the contract. Moreover, it is argued that the doctrines of waiver, abandonment, and estoppel preclude Skousen's recovery for "wrongful termination." We agree that Skousen cannot recover for wrongful termination under the circumstances of this case.

We are guided by the following proposition.

■ "If, after a careful consideration of the words of a contract, in the light of all the relevant circumstances, and of all the tentative rules of interpretation based upon the experience of courts and linquists, a plain and definite meaning is achieved by the court, a meaning actually given by one party as the other party had reason to know, it will not disregard this plain and definite meaning and substitute another that is less convincing." 3 A. Corbin, Corbin on Contracts § 535, at 19–20 (1960).

Skousen asserts that by signing the February 28, 1967 agreement he intended only to attempt to "mitigate the detriment of both parties arising from Vinnell's breach" and not to forfeit a cause of action for breach of wrongful termination. His interpretation of the agreement however, is strongly contrary to the unambiguous and natural import of the language of the agreement.

The definition and effect of termination is specifically provided for in A.R.S. § 44–2306, subsec. C (1956) :

" 'Termination' occurs when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach. On 'termination' all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives."

■ Clearly a termination of the subcontract occurred when the agreement was signed on February 28, 1967. The signing of the agreement was consensual. Skousen did not argue at trial that the agreement was signed under duress nor do the facts developed at trial reveal duress. Vinnell's lawyer did state that suit would be brought if Skousen chose not to sign the agreement. But we have previously held that "[i]t is not duress to declare an intention to resort to the courts for the purpose of insisting on what one believes are one's legal rights." Dunbar v. Dunbar, 102 Ariz. 352, 356, 429 P.2d 949, 953 (1967).[1] The effect of this termination agreement depends upon the words of the agreement and the circumstances surrounding the signing of the agreement.

■ The circumstances surrounding the execution of the agreement are reflective of the notion that the agreement was executed to mitigate damages. Skousen was expressly told by Vinnell's lawyer and by Vinnell's vice president that they intended to terminate the subcontract. It was then that Skousen signed the agreement.

By signing the termination agreement Skousen agreed that he had failed to prosecute the work required diligently or to make proper progress. Additionally by

[1]. In his petition for review Skousen argues that the rigidity of the Arizona Rules of Civil Procedure precluded him from interjecting the affirmative defense of duress. Skousen filed a complaint; Vinnell answered and the court did not order a reply. We are not persuaded by this argument for two reasons. First, Skousen did not move for leave to file a reply. Second, Skousen does not now allege facts to prove duress different from those proven at trial. We have already stated that the facts proven at trial did not indicate duress.

agreement he waived the forty-eight hour notice provision and the only recovery reserved was the right to receive the excess of the subcontract as prescribed under paragraph 11 of the subcontract.

By agreement Skousen admitted the operative condition to the termination of the contract—his breach in failing to make proper progress. The breach for which he is now suing is for Vinnell's noncompliance with the promise of four months to complete the project. But by signing the agreement, acquiescing in the termination and, most significantly, permitting Vinnell to complete the project, Skousen cannot now nullify this conduct by claiming that he was not permitted four months time to finish the project. The two positions are inconsistent and the present action is barred under the doctrine of waiver.

"[A]fter a contract has been rescinded by mutual consent, it cannot be made the basis for any action by one party against the other, except in so far as is necessary to the restoration of the *status quo*. All breaches of the contract are waived by the rescission, and no action can be maintained * * * for being prevented from performing under it." Reed v. McLaws, 56 Ariz. 556, 563, 110 P.2d 222, 225 (1941).

We are aware of the imperfection and uncertainty of language and wary of ascribing one "true" meaning to words in a contract. But where a contract so clearly prescribes the conditions and consequences of agreement and no defense can be successfully maintained we are led to but one alternative: giving the contract effect as written.

The judgment of the trial court is reversed and the matter remanded with direction to enter judgment in favor of Vinnell; opinion of the Court of Appeals, 15 Ariz.App. 576, 490 P.2d 21 (1971) vacated.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER, and HOLOHAN, JJ., concur.