732 P.2d 579

**USLIFE TITLE COMPANY OF ARIZONA, an Arizona corporation; USLife Title Insurance Company of Dallas, a Texas corporation, Plaintiffs-Appellees,**

v.

**Jerome S. GUTKIN and Anita F. Gutkin, husband and wife, Defendants-Appellants.**

**No. 1 CA–CIV 8252.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 18, 1986.

Reconsideration Denied Nov. 25, 1986.

Review Denied Feb. 11, 1987.

Jennings, Strouss & Salmon by Riney B. Salmon II, David J. Estes, Phoenix, for plaintiffs-appellees.

Robbins & Green, P.A. by Joe M. Romley, Phoenix, for defendants-appellants.

## OPINION

GRANT, Presiding Judge.

The determinative issue in this appeal is whether the trial court improperly concluded that appellees, USLife Title Co. of Arizona and USLife Title Insurance Co. of Dallas (USLife), were entitled to an award of $17,000 on the basis of unjust enrichment.

## I. FACTS

The facts giving rise to the litigation are as follows. Prior to September, 1978, appellants, Jerome S. Gutkin and Anita F. Gutkin (Gutkin), owned real property located at the northwest corner of 19th Street and Greenway Road in Phoenix, Arizona. This property measured 330 feet east and west by 297 feet north and south, with 30 feet of the east-west dimension being subject to an easement to the City of Phoenix for the east one-half of 29th Street and 33 feet of the north-south dimension being subject to an easement to the City of Phoenix for the north one-half of Greenway Road.[1]

Pursuant to escrow instructions dated September 26, 1978, Gutkin sold the above described property to Mark and Linda Faigus, husband and wife (Faigus), for the sum of $150,000, with $43,500 being payable in cash at the close of escrow and the deferred purchase price of $106,500 being in the form of a promissory note payable in the following manner: a) $31,500 on or before January 2, 1979; and b) $15,000 or more, plus interest at the rate of 9½% per annum in annual installments on the 1st of November of each year beginning November 1, 1979.

USLife prepared the escrow instructions for the transaction. The instructions described the property being conveyed as follows:

SE¼SW¼SW¼ of Section 2, T3N, R3E, G & SRB & M, *EXCEPT the South 33' and the East 30', also known as Assessor's Parcel 214-38-7F*, the Northwest corner of 29th Street and Greenway Road, Phoenix, Arizona.

(Emphasis added.) Since the south 33 feet of the parcel consisted of one-half the width of Greenway Road, and the east 30 feet of the parcel consisted of one-half of the width of 29th Street, it is apparent that the escrow instructions contemplated the sale of a parcel exclusive of the roadways.

An addendum to the escrow instructions further provided in part:

46. When the principal amount of $75,000 has been paid on the purchase price, Buyers are to have released to them, free and clear of all liens and encumbrances, the east one-half of the property, being one net acre, or more.

At the close of escrow on November 3, 1978, Gutkin tendered a Joint Tenancy Deed to Faigus. In addition, Faigus executed a Deed of Trust and Assignment of Rents securing the payment of the purchase price, with USLife designated as trustee and Gutkin designated as beneficiary. Both of these documents were prepared by USLife and were recorded in the Office of the Maricopa County Recorder. The recorded documents described the property as follows:

The East 330 feet of the South 333 feet of the Southwest quarter of the Southwest quarter of the Southeast quarter of Section Two (2), township Three (3) North, Range Three (3) East.

These legal descriptions failed to exclude the south 33 feet of the property and the east 30 feet of the property where Greenway Road and 29th Street, respectively, were located.

---

1. The property was legally described as the East 330 feet of the South 333 feet of the Southwest quarter of the Southwest quarter of the South-

east quarter of Section Two (2), Township Three (3), North, Range Three (3), East.

In January, 1979, Faigus completed payment of one-half of the purchase price. Pursuant to paragraph 46 of the addendum to the escrow instructions, Faigus secured release of the east one-half of the property. This conveyance was evidenced by a Deed of Partial Release and Partial Reconveyance prepared by USLife. The deed was recorded in the Office of the Maricopa County Recorder with the following description:

> The East half of the East 330 feet of the South 333 feet of the Southwest quarter of the Southwest quarter of the Southeast quarter of Section Two (2), Township three (3) North, Range Three (3) East.

This legal description, like the two previously recorded ones, also failed to exclude the roadways. Of consequence, the property was divided in half without first subtracting from its dimensions the roadways.

Faigus defaulted on the payment of the remainder of the purchase price on November 1, 1979. Accordingly, USLife, as trustee under the Deed of Trust and Assignment of Rents, forfeited Faigus' interest in the west half of the property by Notice and Sale. Following the forfeiture sale, USLife tendered a Trustee's Deed upon Sale to Gutkin dated May 21, 1980. The deed was recorded and it described the property as follows:

> The West one-half (½) of the following described property:
> The East 330 feet of the South 333 feet of the Southwest quarter of the Southwest quarter of the Southeast quarter of Section Two (2), Township Three (3) North, Range Three (3) East, G & SRB & M.

Once again, this recorded deed did not exclude the roadways.

On March 16, 1981, pursuant to an escrow also established at USLife, Faigus sold his interest in the east half of the property to Fred and Joan Miones, husband and wife (Miones), and Carmelo and Mary T. Arena, husband and wife (Arena). The escrow instructions described the property to be conveyed as follows:

> The East 180' feet of the South 333' of the southwest ¼ of the southwest ¼ of the southeast ¼ of Section 2, T3N, R3E, *EXCEPT the East 30' and the South 33' thereof*, G & SRB & M
> Also known as the East half of Assessor's parcel #214–38–7F, being the northwest corner of 29th Street and Greenway.

(Emphasis added.) Thus, these escrow instructions, like the escrow instructions between Gutkin and Faigus, excluded the roadways.

A Warranty Deed, prepared by USLife with respect to the sale, was recorded in the Office of the Maricopa County Recorder on April 16, 1981. The property was described in the deed as follows:

> The East 180' of the South 333' of the Southwest quarter of the Southwest quarter of the Southeast quarter of Section 2, Township Three (3) North, Range three (3) East of the Gila and Salt River Base and Meridian.

The legal description clearly did not exclude the roadways. USLife issued a title insurance policy to Miones and Arena.

In the later part of June, 1981, Miones and Arena contacted USLife to advise it that they were unable to secure construction financing and construct apartments on their property because the "usable" east-west dimension of the property to which they had obtained record title ownership was only 135 feet. Miones and Arena further advised USLife that the problem was costing them $5,000 per day, and they threatened to file a $1,500,000 lawsuit against USLife.

The conflict between USLife and Miones and Arena was whether USLife, in dividing the property originally sold by Gutkin to Faigus into an east half and a west half (at the time the Deed of Partial Release and Partial Reconveyance was prepared and at the time the Trustee's Deed upon Sale was prepared) should have excluded the roadways, thereby using an east-west dimension of 300 feet. If USLife had, Faigus and Gutkin each would have obtained a parcel with an east-west dimension of 150

feet, exclusive of roadways. USLife, however, did not exclude the roadways and instead used an east-west dimension of 330 feet. Faigus thus was conveyed a parcel with an east-west dimension of 165 feet, the east 30 feet of which was Greenway Road; Gutkin, by contrast, received a parcel with an east-west dimension of 165 feet, no part of which was a roadway. The result of USLife's use of an east-west dimension of 330 feet created a dispute over the ownership to the 15–foot wide strip of land which made up the east 15 feet of the land conveyed to Gutkin by the Trustee's Deed upon Sale.

In an attempt to determine ownership to the 15–foot parcel, Arthur Clifford, President of USLife, reviewed USLife's escrow and title files. From his review of the files, Clifford concluded that Faigus only intended to acquire, and Gutkin only intended to convey the "usable" property, exclusive of the roadways, as provided in the escrow instructions. Clifford determined that the title company erred when it prepared each of the recorded documents with legal descriptions which failed to except the roadways. Having found that a simple clerical error had been made, Clifford contacted Gutkin and requested that Gutkin execute a quitclaim deed to correct the problem. Gutkin initially stated that he wanted $25,000 in exchange for a quitclaim deed.

USLife thereafter entered into negotiations with Gutkin and ultimately agreed to pay Gutkin $17,000 for a quitclaim deed to the property. This agreement was embodied in a letter prepared by Gutkin, which provided in part:

> This is to verify our communication this date relative to my sale to USLife Title Company of Arizona, a strip of property located on the north side of Greenway road 135 feet from the Northwest corner of 29th Street and Greenway, running a distance of 15 feet to the West and back, approximately 297 feet.
>
> * * * * * *
>
> My wife and I are hereby Quit Claiming all interest and title to the 15 feet of land above described to those persons to whom you have guaranteed title on said property, and that I am receiving as consideration for the sale of said property the sum of $17,000, paid to me this date by U.S. Life Title Company of Arizona.

Larry Dale executed and signed the letter on behalf of USLife. Pursuant to the agreement USLife paid Gutkin $17,000 and Gutkin tendered a quitclaim deed to Miones and Arena. The quitclaim deed described the property being conveyed as follows:

> The East 180 feet of the South 333 feet of the Southwest quarter of the Southwest quarter of the Southeast quarter of Section Two (2), Township Three (3) North, Range (3) East of the Gila and Salt River Base and Meridian, Maricopa County, Arizona.

On June 29, 1983, USLife filed a complaint against Gutkin. Count I alleged that Gutkin had been unjustly enriched by receiving $17,000 for property to which he had no just claim. Count II alleged that Gutkin's refusal to voluntarily execute the quit-claim deed constituted economic duress and coercion. The matter was tried to the court and on November 9, 1984, judgment was entered in favor of USLife for $17,000. The unjust enrichment award was based on the court's findings that Gutkin originally intended to sell the disputed strip to Faigus, and that Gutkin did not have a good faith belief in his ownership of the property when he negotiated with US-Life. The trial court also awarded USLife costs in the amount of $366.50 and attorneys' fees in the amount of $8,100.

## II. ISSUES

On appeal, Gutkin raises three issues: (1) whether USLife's complaint failed to state a claim for unjust enrichment; (2) whether USLife's claim was barred by compromise and settlement; (3) whether USLife's failure to reconvey to Gutkin the disputed property precluded the entry of judgment.

## III. UNJUST ENRICHMENT

Gutkin first argues that Larry Dahl's execution of the letter of July 9, 1982, in

which Gutkin agreed to quitclaim the disputed parcel in exchange for $17,000 is evidence of a binding contract between Gutkin and USLife. Thus, Gutkin maintains that the doctrine of unjust enrichment is inapplicable to the facts of this case. We agree.

It is the well established law of Arizona that in order to prevail upon a theory of unjust enrichment, a plaintiff must establish that, (1) plaintiff conferred a benefit upon the defendant; (2) defendant's benefit is at plaintiff's expense; and (3) it would be unjust to allow defendant to keep the benefit. *Murdock-Bryant Const., Inc. v. Pearson*, 146 Ariz. 48, 53, 703 P.2d 1197, 1202 (1985); *Pyeatte v. Pyeatte*, 135 Ariz. 346, 352, 661 P.2d 196, 202 (App. 1982). While the aforementioned elements are necessary to maintain a cause of action for unjust enrichment, they are not always sufficient. For instance, our courts have repeatedly held that the existence of a contract specifically governing the rights and obligations of each party precludes recovery for unjust enrichment. *Brooks v. Valley Nat'l Bank*, 113 Ariz. 169, 548 P.2d 1166 (1976); *Johnson v. American Nat'l Ins. Co.*, 126 Ariz. 219, 223, 613 P.2d 1275, 1279 (App.1980). That the doctrine of unjust enrichment has no application to express contractual situations, quite obviously, results from the fact that unjust enrichment is a form of restitutionary relief available upon either "implied in fact" contract or quasi-contractual grounds. *Pyeatte*, 135 Ariz. at 353, 661 P.2d at 203; D. Dobbs, *Remedies* § 4.2 at 237 (1973); 1 Willeston, *Contracts* § 3 and 3A at 10–15 (3d ed. 1957). Whereas an implied in fact contract is a true contract, it differs from an express contract because it is proved by circumstantial evidence and not by express written or oral terms. *Pyeatte*, 135 Ariz. at 353, 661 P.2d at 203. By contrast, a quasi contract is not a contract, but it is a duty imposed in equity to prevent unjust enrichment. *Id.*

It is our opinion that when Dahl acknowledged the Gutkin letter of July 9, 1981, USLife entered into a binding agreement to pay Gutkin $17,000 in exchange for Gutkin's promise to quitclaim to Miones and Arena his interest, (if any), to the 15–foot parcel. And notwithstanding the trial court's finding that Gutkin did not have a good faith belief as to ownership of the parcel, we believe that Gutkin's promise to quitclaim the property and subsequent execution of the quitclaim deed constituted adequate consideration for USLife's payment of $17,000. Valid consideration consists of either a benefit to the promisor or detriment to the promisee. *Larson-Hegstrom & Associates v. Jeffries*, 145 Ariz. 329, 701 P.2d 587 (App.1985); *K–Line Builders, Inc. v. First Federal Savings and Loan Ass'n*, 139 Ariz. 209, 677 P.2d 1317 (App.1983). Monetary compensation is not needed; any benefit to the promisor or detriment to the promisee is sufficient. *Larson-Hegstrom*, 145 Ariz. at 332, 701 P.2d at 590; *Mack v. Coker*, 22 Ariz.App. 105, 523 P.2d 1342 (1974). Because the execution of the quitclaim deed relieved USLife from the immediate threat of a $1,500,000 lawsuit, there can be no dispute that USLife benefitted from the agreement.

The *Restatement (Second) of Contracts* (1979) further underscores that the quitclaim deed amounted to valuable consideration. Section 74(2) provides:

> The execution of a written instrument surrendering a claim or defense by one who is under no duty to execute it is consideration if the execution of the written instrument is bargained for even though he is not asserting a defense and believes that no valid claim or defense exists.

Once more, by its very definition a quitclaim deed releases any interest an individual possesses in a given piece of property—even it that individual possesses no interest in that property. *Black's Law Dictionary (5th Ed.)* defines a quitclaim deed as a release that is "intended to pass any title, interest, or claim which the grantor may have in the premises, but not professing that such title is valid, nor containing any warranty or covenants of title."

■ Upon delivery of the quitclaim deed USLife obtained that for which it bargained. USLife was therefore barred from further compensation under an unjust enrichment theory. *Brooks,* 113 Ariz. at 174, 548 P.2d at 1171; *Johnson,* 126 Ariz. at 223, 613 P.2d at 1279; *Restatement of Restitution* § 107, comment (1)(a) (1936). To allow restitution here would be to impermissibly sanction double recovery. *See Jennings v. Lee,* 105 Ariz. 167, 461 P.2d 161 (1969); *Fousel v. Ted Walker Mobile Homes, Inc.,* 124 Ariz. 126, 602 P.2d 507 (App.1979).

We find USLife's arguments to the contrary unavailing. USLife first disagrees that a binding agreement determines its rights here. USLife suggests that a cause of action for unjust enrichment accrued at the very moment it conveyed to Gutkin the Trustee's Deed upon Sale.[2]

Admittedly, the record before us does support the trial court's finding that as evidenced by the escrow instructions Gutkin intended to sell to Faigus the parcel exclusive of the roadways. If true, when USLife executed the Deed of Partial Release and Reconveyance it failed to transfer to Faigus all the property to which Faigus was entitled. In issuing the Trustee's Deed upon Sale, on the otherhand, USLife conveyed to Gutkin the 15-foot wide strip to which Gutkin was not entitled. Yet even assuming that Gutkin was "benefitted" by receiving land intended for Faigus, we cannot agree that USLife deserves restitution.

It does not follow that any benefit obtained by Gutkin was incurred at the expense of USLife. Indeed, if there was an unjust enrichment, it was at the expense of Faigus who was presumably to obtain the 15-foot parcel upon payment of one-half the purchase price. USLife only incurred an expense when it directly paid $17,000 to Gutkin. Because USLife is the plaintiff in this action rather than Faigus, it was error for the trial court to hold Gutkin liable.

USLife further attempts to establish its claim for unjust enrichment by comparing the case at bench with *Automotive Tire Services, Inc. v. First Nat'l Bank of Arizona,* 102 Ariz. 512, 433 P.2d 804 (1967). In *Automotive Tire,* the defendant made a stop payment order on a check. The plaintiff-bank, however, negligently cashed the check when it was presented for payment. The bank then agreed to recredit the defendant's account on the condition that defendant would pay back the bank after settling its business affairs. The defendant did not repay the bank and the court entered an order in favor of the bank for unjust enrichment. *Id.* at 514, 433 P.2d at 806.

We find USLife's reliance on *Automotive Tire* misplaced. The instant matter is readily distinguishable. Gutkin performed his obligation, pursuant to agreement with USLife, to quitclaim the disputed parcel to Miones and Arena. By contrast, the defendant in *Automotive Tire* failed to perform his duty to repay the bank. Because the bank did not obtain the benefit of its bargain it was free to pursue a claim for unjust enrichment. *See Brooks,* 113 Ariz. at 174, 548 P.2d at 1171; *Johnson,* 126 Ariz. at 223, 613 P.2d at 1279; *Restatement of Restitution* § 107, comment (1)(a) (1936). USLife, however, receiving that for which it contracted, was precluded from further recovery. *Id.*

## IV. ALTERNATIVE CONTENTIONS

We now turn to consider USLife's alternative contentions. Although USLife takes great effort to disclaim the existence of a contract, it also argues that, assuming the existence of a contract, it is either unenforceable or voidable. USLife suggests in its appellate brief that Gutkin was under a pre-existing obligation to quitclaim the 15-foot wide parcel. In addition, Count II of USLife's complaint alleged that Gutkin's refusal to quitclaim the parcel without payment from USLife constituted economic du-

**2.** USLife maintains that the $17,000 later received by Gutkin merely established the monetary value of the benefit.

ress and coercion. We address these arguments in turn.

### A. Preexisting Duty

■ If a preexisting duty were owed to Faigus, Gutkin's execution of a quitclaim deed would fail to constitute adequate consideration in exchange for a return promise from Faigus.[3] *See Travelers Ins. Co. v. Breese*, 138 Ariz. 508, 675 P.2d 1327 (App. 1983); *Leon v. Precision Plumbing and Heating of Southern Arizona, Inc.*, 121 Ariz. 514, 591 P.2d 1002 (App.1979). However, we find no Arizona authority to support USLife's position which, although somewhat unclear, seems to suggest that the performance of a preexisting duty owed to Faigus was insufficient consideration for USLife's promise to pay Gutkin $17,000. To the contrary, the trend of the law is to hold that the performance of a preexisting contractual duty is consideration provided the duty is not owed to the promisor. *Restatement (Second) of Contracts* § 73, comment (d) (1979). Of even greater significance is that challenges to the adequacy of consideration are determined as issues of fact in breach of contract lawsuits. *See, e.g., Larson-Hegstrom*, 145 Ariz. at 331, 701 P.2d at 589; *K–Line Builders*, 139 Ariz. at 212, 677 P.2d at 1320; *Travelers Ins. Co.*, 138 Ariz. at 510, 675 P.d at 1329. USLife is not before us defending a breach of contract lawsuit initiated by Gutkin. We therefore find its preexisting duty argument immaterial to a resolution of the issues presented here.

### B. Economic Duress and Coercion

Count II of USLife's complaint also alleged that Gutkin's refusal to execute the quitclaim deed without payment from USLife constituted economic duress and coercion. While USLife does little to devel-op this argument on appeal, it presumably relies on the doctrine of business compulsion or economic duress to argue in the alternative that, assuming it entered into a contract with Gutkin to pay $17,000 in exchange for Gutkin's execution of a quitclaim deed, the contract was voidable. Accordingly, USLife would be entitled to recovery under an unjust enrichment theory. Section 70 of the *Restatement of Restitution* (1936) supports such a contention. It provides in part:

> A person who has conferred a benefit upon another as a result of a transaction which is void or voidable because of duress or undue influence, is entitled to restitution....

Likewise, Arizona courts have long held that contracts procured under duress are unenforceable. *Ingalls v. Neidlinger*, 70 Ariz. 40, 216 P.2d 387 (1950); *State v. Sands*, 145 Ariz. 269, 700 P.2d 1369 (App. 1983); *Johnson*, 126 Ariz. at 226, 613 P.2d at 1282.

■ We have searched the record and find no economic duress or coercion here. As indicated by Count II of its complaint, USLife apparently contends that because Gutkin knew that USLife was subject to a threatened lawsuit of $1,500,000 and to $5,000 damages on a daily basis, his refusal to voluntarily execute a quitclaim deed amounted to economic duress. But the mere fact that Gutkin may have been aware of economic pressures bearing upon USLife fails to constitute economic duress. *Frank Culver Elec., Inc. v. Jorgenson*, 136 Ariz. 76, 664 P.2d 226 (App.1983). The *Culver* court described the requirements for a claim of business duress as follows:

> A charge of economic duress or business compulsion must be based on the acts or conduct of the opposite party and not merely on the necessities of the purported victim, or on his fear of what a third

---

**3.** USLife does not articulate to whom a preexisting legal duty was owed. Its argument that Faigus was entitled to the 15–foot parcel upon completing payment of one-half of the purchase price, nevertheless, obviously indicates that the alleged duty was owed to Faigus. We recognize that USLife might also be contending that Miones and Arena were legally entitled to the parcel. However, we summarily reject any suggestion that a preexisting duty was owed to Miones and Arena; they were not in privity of contract with Gutkin. Nor were they successors in interest to the disputed parcel.

person might do, and the mere fact that a person entered into a contract with reluctance, or as a result of the pressure of business circumstances, financial embarrassment, or economic necessity does not, of itself, constitute business compulsion or economic duress invalidating the contract.

Unless wrongful, unlawful or unconscionable pressure is applied there is no business compulsion amounting to duress·

. . . .

*Id.* at 78, 664 P.2d at 228, quoting 17 *C.J.S. Contracts* § 177 (1963).

 USLife does not maintain that Gutkin threatened or compelled it to assent against its will. Nor would the evidence support such a finding. We therefore conclude that the contract was not voidable based on alleged duress from Gutkin. More importantly, even if USLife had entered into the contract with Gutkin under duress, any right to restitution was destroyed by USLife's affirmation of the contract. Indeed, in order for USLife to recover it would have to secure a reconveyance of the 15–foot wide parcel to Gutkin. *See Jennings,* 105 Ariz. at 171, 461 P.2d at 165; *Jones v. C.P.R. Division, Upjohn Co.,* 120 Ariz. 147, 584 P.2d 611 (App.1978); 77 A.L. R.2d 426; *Restatement (Second) of Contracts* § 384 (1979).

Finally, USLife states in its answering brief that its entry into any contract was involuntary in light of pressure placed on it by Miones and Arena, and hence voidable. Normally, we must refuse consideration of arguments raised for the first time on appeal. *Stratton v. Inspiration Consolidated Copper Co.,* 140 Ariz. 528, 683 P.2d 327 (1984); *Dillig v. Fisher,* 142 Ariz. 47, 688 P.2d 693 (App.1984). Because of uncertainty as to whether the issue was raised at trial, we will address it now. We begin by noting the rule of the *Restatement (Second) of Contracts* (1979) which provides that duress of a person not a party to the contract makes a contract voidable under most circumstances. Section 175(2) states:

If a party's manifestation of assent is induced by one who is not a party to the

transaction, the contract is voidable by the victim unless the other party in good faith and without reason to know of the duress either gives value or relies materially on the transaction.

 We likewise find untenable US-Life's position that any entry into a contract with Gutkin was procured by the duress from Miones and Arena. Duress is an act or threat that results in the preclusion of the exercise of free will and judgment. *Estate of Cohen,* 105 Ariz. 337, 464 P.2d 620 (1970); *Dunbar v. Dunbar,* 102 Ariz. 352, 429 P.2d 949 (1967). By definition, moreover, an act or threat to be duress must be wrongful. *Dunbar,* 102 Ariz. at 356, 429 P.2d at 953; *Republic Nat'l Life Ins. Co. v. Rudine,* 137 Ariz. 62, 668 P.2d 905 (App.1983). It can hardly be asserted that Miones' and Arenas' threatened lawsuit was a wrongful act constituting duress. It is never duress to assert an intention to resort to the courts for the vindication of one's legal rights. *Vinnell Corp. v. State ex rel. Bob Skousen Contractor, Inc.,* 109 Ariz. 87, 505 P.2d 547 (1973); *Dunbar,* 102 Ariz. at 356, 429 P.2d at 953. The contract then was not induced by duress from Miones and Arena. Therefore we need not even look to the conditions of good faith and material reliance found in the *Restatement (Second) of Contracts* § 175(2) (1979) to determine whether the contract was voidable. It was not voidable and hence it was binding. And, as previously discussed, even assuming duress, US-Life's right to restitution was lost upon its acceptance of the contract.

In sum, having determined that a binding agreement existed between USLife and Gutkin, we reverse the trial court's judgment in favor of USLife on a theory of unjust enrichment. Our decision makes it unnecessary to address Gutkin's additional assignments of error.

Since the trial court found that Gutkin intended to sell the land exclusive of roadways, Gutkin did receive payment on two occasions for the 15–foot parcel. Faigus initially paid for that land. Thereafter, US-Life paid for the same parcel. We do not

**358**

think the result unfair to USLife. USLife sought the quitclaim deed only as a means to minimize the costs of defending itself in a lawsuit and to protect itself from incurring damages therein. It was USLife, moreover, who created the very controversy here by failing to exclude the roadways in its negligent preparation of numerous deeds.

## V. CONCLUSION

We reverse the judgment of the trial court and remand with directions for entry of judgment for the defendant Gutkin.

Because this litigation arises out of contract pursuant to A.R.S. § 12–341.01, we also order the trial court to consider an award for attorneys' fees and costs incurred by Gutkin. *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 710 P.2d 1025 (1985); *see also Marcus v. Fox*, 150 Ariz. 333, 723 P.2d 682 (1986). Further, Gutkin's motion for attorneys' fees on appeal is granted and he is directed to file an affidavit of costs in compliance with rule 21(c), Arizona Rules of Civil Appellate Procedure. *See Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App.1983).

BROOKS and MINKER, JJ., concur.

The Honorable ALLEN G. MINKER of the Greenlee County Superior Court, State of Arizona, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Ariz. Const. Art. VI, § 3.