NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

DANIEL BOYLE, *Petitioner/Appellee*,

*v.*

LISA MALTA, *Respondent/Appellant*.

No. 1 CA-CV 18-0762 FC
FILED 5-14-2020

Appeal from the Superior Court in Maricopa County
No. FN2017-053297
The Honorable Adam. D. Driggs, Judge

**VACATED IN PART; AFFIRMED IN PART; REMANDED FOR
RECONSIDERATION**

COUNSEL

Phelps & Moore PLLC, Phoenix
By Jon L. Phelps, Robert M. Moore, Jennie I. Tetreault
*Counsel for Petitioner/Appellee*

Lisa Malta, Phoenix
*Respondent/Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Jennifer B. Campbell and Vice Chief Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

**¶1**          Lisa Malta ("Wife") appeals from the superior court's ruling that the parties' Postnuptial Agreement (the "Agreement") was unenforceable and from other decisions in the decree of dissolution. Because the court applied an incorrect legal standard in finding that the Agreement was unenforceable, we vacate that ruling and remand for reconsideration. We affirm the remaining issues with instructions on remand.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**          The parties were married in 2014, and Daniel Boyle ("Husband") filed a petition for dissolution in August 2017. In January 2016, the parties entered into the Agreement, which provided that Husband would pay specific existing obligations and spousal maintenance for one year at "a level of support comparable to prior to filing." The Agreement also obligated Husband to pay $880 per month in child support for Wife's child from a prior relationship and pay back a $3500 debt Husband owed Wife's child.

**¶3**          Husband filed a petition for dissolution in August 2017. After Wife filed an emergency motion for temporary spousal maintenance, the court initially ordered Husband to pay Wife $750 for October 2017. At a November 2017 hearing, the parties attempted to reach an agreement about spousal maintenance. They did not, so the court ordered Husband to pay temporary spousal maintenance of $2000 per month and scheduled an evidentiary hearing for December.

**¶4**          At the December 2017 hearing, Wife's attorney had withdrawn, and Wife represented herself. The superior court affirmed the temporary spousal-maintenance order and ordered Wife to sign HIPPA releases so Husband could respond to Wife's claim that she was unable to work because of health reasons. The court scheduled the trial for August 2,

2018. The court denied Wife's subsequent request for a continuance to find an attorney. Wife then filed an expedited request for a continuance on July 27, including a doctor's note stating she was unable to prepare for trial for the next 60 days "due to her medical conditions," which included insomnia, sleep apnea, and fibromyalgia. The court continued the trial to October 31, 2018.

¶5         Husband submitted his pretrial statement and trial exhibits one week before the trial as ordered, disclosing a psychologist as an expert witness for the first time. The day before trial, at 4:44 p.m., Wife sought a continuance based on her medical issues and Husband's failure to provide bank records. Wife again submitted a note from her doctor, dated October 1, 2018, which was nearly identical to the previous note. Wife also objected to Husband's expert witness on relevance and qualification grounds but did not object to the late disclosure. Her motion also included multiple exhibits.[1] Wife delivered her trial exhibits to the court at 4:44 p.m. the day before the trial.

¶6         On the day of the trial, Wife emailed the superior court less than an hour before the trial "to advise that she was 'very, very ill' and had to go urgently to her medical provider" and would be late. Wife arrived 45 minutes late to the trial. The court found insufficient evidence that Wife was unable to proceed and denied a continuance.

¶7         In the decree, the superior court ordered all bank accounts and debts divided equally, noting there were no financial records offered at the trial. The court found the Agreement was invalid because both parties did not sign it. Finding insufficient evidence that Wife could not work in her trained field as a social worker, the court awarded Wife spousal maintenance of $2000 per month for a year effective October 1, 2017. The court noted that because Husband had already paid $20,525 in temporary spousal maintenance, he only had a remaining support obligation of $3475 by the date of the decree. Finally, the court denied Wife's request for attorney's fees, finding that although Husband had superior financial resources, Wife acted unreasonably throughout the litigation.

¶8         Both parties filed motions challenging the decree. Before the superior court could rule, Wife filed a notice of appeal. This court stayed

---

[1]     According to the court clerk, pages 11–131 of this document were temporarily misplaced due to a clerical error but were later returned to the file.

the appeal to allow the superior court to rule on the pending post-decree motions. The superior court denied Wife's motion for reconsideration without comment but granted Husband's motion to correct the amount of spousal maintenance paid, awarding him an offset of $2227. We have jurisdiction over the appeal under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

### A. The Superior Court Erred by Holding the Agreement was Void for Lack of a Signature.

¶9        Wife contends the Agreement was enforceable and entitled her to additional financial support. Husband testified that he signed the Agreement under duress and that Wife never signed it. Wife claims she signed the Agreement, but a copy was not admitted in evidence at the trial. Wife attached a signed copy of the Agreement to her untimely motion for a continuance. Unlike the copy attached to Wife's earlier proposed resolution management conference statement, this copy of the Agreement purported to show her notarized signature.

¶10        The superior court found the Agreement was invalid because Wife did not sign it, expressly relying on A.R.S. § 25-202(A), which states: "A premarital agreement must be in writing and signed by both parties." A "premarital agreement," is defined as an agreement "between *prospective spouses . . . in contemplation of marriage . . .* that [are] effective on marriage." A.R.S. § 25-201(1) (emphasis added). In contrast, "[a] postnuptial agreement is defined as '[a]n agreement entered into during marriage to define each spouse's property rights in the event of death or divorce.'" *Austin v. Austin*, 237 Ariz. 201, 206–07, ¶ 14 (App. 2015) (second alteration in original) (citing Black's Law Dictionary 1356 (10th ed. 2014)). The Arizona Uniform Premarital Agreement Act, A.R.S. §§ 25-201 to –205, does not address the enforceability of a postnuptial agreement.

¶11        The parties entered into the Agreement during the marriage; therefore, it is not governed by A.R.S. § 25-202. Thus, whether both parties signed the agreement does not conclusively determine whether the Agreement is enforceable.[2] Postnuptial agreements are enforceable if they

---

[2]        The dispute over whether Wife altered the third page of the Agreement to include her signature is now moot, although it remains relevant to Wife's credibility.

are free from fraud, coercion, undue influence, and not unfair. *In re Harber's Estate*, 104 Ariz. 79, 87 (1969) (recognizing the validity of a property settlement agreement made during the marriage and not in anticipation of divorce or separation); *Buckholtz v. Buckholtz*, 246 Ariz. 126, 131, ¶¶ 17–18 (App. 2019). When a postnuptial agreement is challenged because of coercion or undue influence, the party seeking to uphold the agreement must prove by clear and convincing evidence that it was not coerced and is not unfair. *Austin*, 237 Ariz. at 206, ¶ 13 (quoting *Harber*, 104 Ariz. at 88); *see also* A.R.S. § 25-317(B) (the terms of a separation agreement "are binding on the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties . . . that the separation agreement is unfair"); *Buckholtz*, 246 Ariz. at 131, ¶¶ 17–18; *but cf. Hutki v. Hutki*, 244 Ariz. 39, 43, ¶ 18 (App. 2018) (dicta stating that the burden established in *Harbor* was superseded by Rule 69).

**¶12**        Because the superior court applied an incorrect legal standard in determining whether the Agreement was enforceable, we vacate the ruling that the Agreement was not enforceable and remand for reconsideration.[3] *Hammett v. Hammett*, 247 Ariz. 556, 559, ¶ 13 (App. 2019) ("A trial court abuses its discretion when it misapplies the law or predicates its decision on incorrect legal principles." (quoting *State v. Jackson*, 208 Ariz. 56, 59, ¶ 12 (App. 2004))). On remand, the superior court may, in its discretion and as necessary to reconsider the Agreement, reopen the evidence to allow for a complete record regarding the Agreement.

---

[3]        We note that the only testimonial evidence at the trial regarding the Agreement came from Husband. He testified that he did not consult an attorney before signing it and signed only after Wife had alienated him from his friends and family, depleted his financial resources, and threatened divorce if he did not sign. To constitute duress, an act must be wrongful, unlawful, or unconscionable, and preclude the exercise of free will and judgment. *USLife Title Co. of Ariz. v. Gutkin*, 152 Ariz. 349, 356–57 (App. 1986). Economic necessity does not constitute duress for invalidating an agreement unless the conduct that caused the financial distress was improper or unfair. *Id.* (quoting *Frank Culver Elec., Inc. v. Jorgenson*, 136 Ariz. 76, 78 (App. 1983)). Threatening divorce is not wrongful. *Id.* at 357 ("It is never duress to assert an intention to resort to the courts for vindication of one's legal rights."). The superior court rejected Husband's claim that he entered the Agreement under duress.

**B.    The Superior Court did not Abuse Its Discretion Regarding Other Issues Raised by Wife.**

¶13        Wife raises several issues regarding the fairness and the way the trial proceeded. Although we have vacated the ruling regarding the Agreement, the reconsideration of that issue does not necessarily impact other decisions, so we address them here.

**1.    There Is No Reversible Error Regarding Husband's Alleged Insufficient and Untimely Disclosures.**

¶14        The superior court found there were no financial records in evidence at trial.[4] Nonetheless, the court equally divided "any community bank account balances as of September 1, 2017," and $47,028 in community debt. Wife argues this was erroneous because Husband failed to provide financial discovery.

¶15        Wife did not request a trial continuance based on lack of disclosure until the day before trial, at 4:44 p.m. Neither Wife nor either of her two former attorneys filed a motion to compel additional discovery at any point in this litigation, despite Wife's claim that Husband never provided bank statements. *See* Ariz. R. Fam. L. P. 65.

¶16        At trial, the superior court asked Husband's attorney about Wife's claim that there were no bank statements. According to Husband's attorney, they complied with all disclosure obligations under Arizona Rule of Family Law Procedure 49 and mailed and emailed all discovery responses, disclosure statements, and exhibits to Wife.[5] Wife also declined Husband's attorney's offer to let her collect copies of the documents she claimed she had not received from his office. Wife denied receiving anything except an email one week before trial with her medical records. Husband's attorney also argued that Wife did not correctly request bank statements, but, in any event, requesting three years of bank statements for a three-year marriage was unreasonable.

---

[4]        There was evidence relating to Husband's retirement account in evidence, but that evidence is not relevant to the issues raised on appeal.

[5]        Husband's appendix included related emails. We do not consider these emails as they were not presented at trial. *GM Dev. Corp. v. Cmty. Am. Mortg. Corp.,* 165 Ariz. 1, 4 (App. 1990) (appellate review is limited to evidence presented at trial).

¶17      We review a superior court's ruling on discovery and disclosure issues for an abuse of discretion. *See Soto v. Brinkerhoff,* 183 Ariz. 333, 335 (App. 1995). We consider the evidence in the light most favorable to upholding the court's ruling and affirm the judgment if reasonable evidence supports it. *In re Marriage of Pownall,* 197 Ariz. 577, 583–84, ¶ 31 (App. 2000). Here, given the absence of a timely request to compel discovery, impose sanctions, or continue the trial, the court did not abuse its discretion.

¶18      Although Husband contends Wife had equal access to any joint bank accounts, nothing in the record shows whether the alleged bank accounts were joint or individual. However, Wife failed to show prejudice because the superior court equally divided any community bank accounts and debts as required by A.R.S. § 25-318, and there was no allegation that Husband had separate accounts in which the community had any interest. *See* Ariz. R. Fam. L. P. 86 (harmless error applies); *In re Marriage of Molloy,* 181 Ariz. 146, 150 (App. 1994) (reversal is warranted only where prejudice affirmatively appears in the record). Although bank statements may have provided information relevant in determining spousal maintenance, Wife was obligated to follow the appropriate rules for obtaining this information if Husband did not comply with his disclosure obligations.

¶19      Wife argues the superior court abused its discretion by permitting Husband's expert to testify at trial because he was not timely disclosed, had never met Wife, relied on incomplete medical records, and testified telephonically. Although Wife objected on some of these grounds at trial, she did not object to the late disclosure. She waived raising the issue on appeal by failing to object. *See State ex rel. Miller v. Tucson Assocs. Ltd. P'ship,* 165 Ariz. 519, 520 (App. 1990). The court correctly noted that Wife's other trial objections went to the weight, not the admissibility of the expert's testimony.

### 2.      Wife Has Not Proved Reversible Error Regarding Her Alleged Medical Condition and Lack of an Attorney.

¶20      Wife contends the superior court abused its discretion by proceeding with the trial after she provided a doctor's note stating she was unable to prepare for the trial or attend depositions for 60 days and because Wife was "heavily medicated" and did not have an attorney. The court has broad discretion in deciding whether to grant a continuance, and we affirm its ruling absent an abuse of that discretion. *Yates v. Superior Court,* 120 Ariz. 436, 437 (App. 1978).

¶21 The superior court found the second doctor's note, submitted the day before trial, was nearly identical to the first note and provided no additional information about why Wife could not proceed. On appeal, Wife cites two more letters from her mental-health providers supporting her request for a continuance. These letters were included with the untimely motion for a continuance and were therefore correctly disregarded.

¶22 Moreover, untimeliness notwithstanding, the letters do not compel a different result. The first letter dated August 21, 2018, from Wife's psychotherapist agreed with the first doctor's note regarding Wife's inability to defend and support her best interests properly. This letter did not necessarily support Wife's *second* request for a continuance in late October because it referred to the original doctor's note from July 2018 and did not include updated information about Wife's health. Wife also cites a letter from a different therapist stating that Wife was being treated for "a mental health related disability" and unable to work. This letter was written a full year before trial; therefore, we presume the court found it had little value regarding Wife's current condition. *See Johnson v. Elson,* 192 Ariz. 486, 489, ¶ 11 (App. 1998) (appellate court may infer additional findings of fact and conclusions of law necessary to uphold the decree if they are reasonably supported by the evidence and do not conflict with express findings).

¶23 The superior court interacted with Wife at trial and on previous occasions. After observing Wife's mental state and behavior, the court found she appeared competent to proceed. We "give[] great latitude to conclusions drawn by judges who observe trial behavior first hand." *State v. Hulsey,* 243 Ariz. 367, 389, ¶ 95 (2018); *see also Smith v. Smith,* 117 Ariz. 249, 253 (App. 1977) (appellate court "observations are limited to the transcript and we must therefore be very careful in attempting to second guess the front line trial court from our rather limited vantage point"). Accordingly, we find no abuse of discretion.

¶24 Regarding Wife's lack of counsel, there is no right to appointed counsel in a dissolution proceeding. *Encinas v. Mangum*, 203 Ariz. 357, 359, ¶ 10 (App. 2002) (in civil cases, due process is satisfied if a litigant can either hire an attorney or represent themselves).

### 3. Wife's Participation in the Address Confidentiality Program Does Not Create a Different Analysis on Appeal.

¶25 Wife participates in the Address Confidentiality Program ("ACP"). *See* A.R.S. §§ 41-161 to -169. The ACP affords protection for

victims of domestic violence by providing participants with a "substitute address" that can be used when interacting with governmental entities, and for purposes of receiving mail or being served with "any process, notice or demand required or permitted by law to be served on the program participant." A.R.S. § 41-162(C). In contrast, Arizona Rule of Family Law Procedure 7 provides a *protected* address for a person whose address is not known to the other party and who reasonably believes that physical or emotional harm may result if the person's address is not protected. Wife incorrectly told the court she has a "protected address."

¶26        Wife contends that Husband and the superior court failed to abide by the mailing-time provision in the ACP statutes. There are no provisions for time extensions included in the ACP statutes. Therefore, we find no grounds to reverse the decree based on any delay in Wife's receiving Husband's trial exhibits or any other documents.

## C.        The Superior Court Did Not Abuse Its Discretion Regarding the Parties' Tax Returns.

¶27        Wife appears to argue that the court erred by crediting Husband and his attorney's explanation for failing to submit the parties' 2016 and 2017 tax returns into evidence. Wife alleges that because Husband made misrepresentations on the parties' 2016 and 2017 tax returns, they were incorrect. As a result, Wife did not sign the returns and claimed Husband erroneously blamed her for not signing the incorrectly completed returns. To support these allegations, Wife relies on evidence that was not admitted at trial, despite the superior court telling her that she needed to admit her exhibits in evidence if she wanted them to be considered. Additionally, when the court specifically asked Wife what she would like it to do about the tax returns, Wife answered, unresponsively, that Husband never paid her for caring for his elderly mother. Thus, we find the court did not abuse its discretion in ordering the parties to file separate tax returns.

## D.        The Superior Court Did Not Err Regarding the Additional Arguments Raised on Appeal.

¶28        Throughout Wife's appellate briefs, she challenges several rulings allocating the parties' debts, personal property, and Husband's income as unfair or not supported by evidence. Wife does not support these generalized allegations with citation to legal authority. Arizona Rule of Civil Appellate Procedure ("ARCAP") 13(a)(7) requires an appellant to support each contention with citations to legal authorities and appropriate references to the record. "Failure to do so can constitute abandonment and

waiver of that claim." *Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009). Accordingly, these issues are waived. *Id.*

**¶29** Wife also contends the superior court erred by allowing attorney Jon Phelps to represent Husband because Phelps' mother was one of Wife's mental-health-care providers. Other than generally alleging a conflict of interest, this argument is not supported by any citation to the record or legal authority. Therefore, we deem this issue waived. *Ritchie*, 221 Ariz. at 305, ¶ 62.

**¶30** Finally, Wife contends she was entitled to an award of attorney's fees in the superior court because Husband unreasonably failed to provide financial disclosure and was "hiding taxes." Because this allegation is not supported by appropriate citations to the record or legal authority, it, too, is waived. *Ritchie*, 221 Ariz. at 305, ¶ 62.

## ATTORNEY'S FEES AND COSTS

**¶31** Husband requests an award of attorney's fees and costs on appeal, alleging that Wife's appeal is frivolous, in bad faith, harassing, and violates ARCAP 13(a)(7). Although Wife's briefs did not comply with the rules of procedure, and we are mindful that the litigation, in this case, may last longer than the marriage, Wife's appeal was not entirely frivolous or brought for an improper purpose. Accordingly, we decline to award Husband attorney's fees on appeal. We view Wife as the prevailing party and award her costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

**¶32** We vacate the portion of the decree finding the Agreement unenforceable and remand for reconsideration based on the correct legal standard. We affirm all other rulings in the decree.



AMY M. WOOD • Clerk of the Court
FILED:   AA